**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| DANTZLER, INC.; NORTHWESTERN SELECTA, INC.; ALBERIC COLÓN AUTO SALES, INC.; ALBERIC COLÓN DODGE CHRYSLER JEEP, INC.; ALBERIC COLÓN FORD, INC. and ALBERIC COLÓN MITSUBISHI, INC.; SACHS CHEMICAL, INC.; MAYS CHEMICAL COMPANY OF P.R., INC.; MADERAS ALPHA, INC.; CELTA EXPORT CORPORATION; COUGAR PLASTICS CORPORATION; CARIBBEAN PRODUCE EXCHANGE, LLC; MADEARTE FURNITURE IMPORTS & DISTRIBUTORS, INC.; MADERAS 3C, INC.; MARJOR & SONS, INC. and M.M. FASHION & DESIGN, INC.; PAPELERA DEL PLATA, INC.; THE PAPERSHOUSE CORP.; PLAVICA, INC.; EMPRESAS BERRIOS, INC., EMPRESAS BERRIOS INVENTORY AND OPERATIONS INC., <br><br>     Plaintiffs <br><br> v. <br><br> PUERTO RICO PORTS AUTHORITY; S2 SERVICES PUERTO RICO LLC; RAPISCAN SYSTEMS, INC.; JOHN DOE; JANE DOE; ABC CORP.; XYZ CORP; UNKNOWN INSURANCE COS., <br><br>     Defendants | Civil No. 2017-cv- <br><br> Class Action <br><br> 42 USC § 1983; <br> Unjust Enrichment; <br> Undue Collection; <br><br> Trial by Jury |

**<u>COMPLAINT</u>**

**TO THE HONORABLE COURT:**

   **NOW COME** Plaintiffs, DANTZLER, INC.; NORTHWESTERN SELECTA,

INC.; ALBERIC COLÓN AUTO SALES, INC.; ALBERIC COLÓN DODGE

CHRYSLER JEEP, INC.; ALBERIC COLÓN FORD, INC. and ALBERIC COLÓN

MITSUBISHI, INC.; SACHS CHEMICAL, INC.; MAYS CHEMICAL COMPANY OF P.R., INC.; MADERAS ALPHA, INC.; CELTA EXPORT CORPORATION; COUGAR PLASTICS CORPORATION; CARIBBEAN PRODUCE EXCHANGE, LLC; MADEARTE FURNITURE IMPORTS & DISTRIBUTORS, INC.; MADERAS 3C, INC.; MARJOR & SONS, INC. and M.M. FASHION & DESIGN, INC.; PAPELERA DEL PLATA, INC.; THE PAPERSHOUSE CORP.; PLAVICA, INC.; EMPRESAS BERRIOS, INC.; EMPRESAS BERRIOS INVENTORY AND OPERATIONS INC., individually and on behalf of others similarly situated, through its undersigned counsel, and file this action against Defendants, Puerto Rico Ports Authority ("PRPA"), Rapiscan Systems, Inc. ("Rapiscan"), and S2 Services Puerto Rico LLC ("S2 Services"), seeking disgorgement of unlawfully collected scanning fees on shipments imported through the maritime port of San Juan.

## I. __INTRODUCTION__

1.  Plaintiffs bring this action, on behalf of themselves and all other similarly-situated individuals (or their guardians or representatives), as entities that paid fees for the scanning of cargo imported into Puerto Rico through the maritime port of San Juan that were illegally collected by Defendants under color of law and authority and in violation of its constitutional rights under the Fifth and Fourteenth Amendment as well as the Commerce Clause of the United States Constitution.

## II. <u>JURISDICTION AND VENUE</u>

2.    Plaintiffs bring this action for violations of the Due Process of the United States Constitution, and *42 U.S.C. §§ 1983 and 1988*, as amended, against Defendants for committing acts, under color of state law, with the intent of depriving it and the putative Class of rights secured under the Constitution and laws of the United States, as well as unjust enrichment and undue collection.

3.    This Honorable Court has jurisdiction pursuant to *28 U.S.C. § 1331* (Federal Question), *28 U.S.C. § 2201* (Declaratory Judgment Act), and *28 U.S.C. § 1343* (Civil Rights).

4.    The claims asserted by the plaintiffs' class, aggregated as required by *28 U.S.C. §1332(d)(6)*, exceed the sum of $5,000,000 within the meaning of *28 U.S.C. §1332(d)(2)*.

5.    This is a class action with some class members are citizens of a State different from that of Defendants, within the meaning of *28 U.S.C. §1332(d)(2)(A)*.

6.    The class of unnamed plaintiffs exceeds 100 in number within the meaning of *28 U.S.C. §1332(d)(5)(B)*.

7.    The primary defendants are not States, State officials, or other governmental entities within the meaning of *28 U.S.C. §1332(d)(5)(A)*.

8.    This Honorable Court has supplemental jurisdiction pursuant to *28 U.S.C. § 1367(a)* over all other claims that arise from a common nucleus of operative facts and are so related to claims in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9.    Venue is proper in this district pursuant to *28 U.S.C. § 1391*(b). The claims asserted in this Complaint are based on the joint conduct of Defendants occurring in this district and, except for Rapiscan Systems, Inc., each Defendant maintains its office(s) and performs its duty(ies) within this district.

10. Plaintiffs demand trial by jury on all issues so triable.

### III. THE PARTIES

11. Plaintiff, DANTZLER, INC., is a corporation created and organized under the laws of Florida, registered in the Commonwealth of Puerto Rico as a foreign corporation, and engaged in the business of importing, distribution and sale of lumber and other construction materials.

12. Plaintiff, NORTHWESTERN SELECTA, INC., is a corporation created and organized under the laws of the Commonwealth of Puerto Rico and engaged in the business of importing and distributing food products in Puerto Rico.

13.    Plaintiffs, ALBERIC COLÓN AUTO SALES, INC.; ALBERIC COLÓN DODGE CHRYSLER JEEP, INC.; ALBERIC COLÓN FORD, INC. and ALBERIC COLÓN MITSUBISHI, INC. are corporations created and organized under the laws of the Commonwealth of Puerto Rico and engaged in the business of importing and selling cars and car parts in Puerto Rico.

14.    Plaintiff, PLAVICA, INC., is a corporation created and organized under the laws of the Commonwealth of Puerto Rico and engaged in the business of importing and selling car glass windows, wind shield, etc. in Puerto Rico.

15.    Plaintiff, SACHS CHEMICAL, INC., is a corporation created and organized under the laws of the Commonwealth of Puerto Rico and engaged in the business of importing and distributing chemical products in Puerto Rico.

16.    Plaintiff, MAYS CHEMICAL COMPANY OF P.R., INC., is a corporation created and organized under the laws of the Commonwealth of Puerto Rico and engaged in the business of importing and distributing chemical products in Puerto Rico.

17.    Plaintiff, MADERAS ALPHA, INC. is a corporation created and organized under the laws of the Commonwealth of Puerto Rico and engaged in the business of importing and distributing construction and other products in Puerto Rico.

18.    Plaintiff, CELTA EXPORT CORPORATION, is a corporation created and organized under the laws of the Commonwealth of

Puerto Rico and engaged in the business of importing and distributing construction and other products in Puerto Rico.

19. Plaintiff, COUGAR PLASTICS CORPORATION is a corporation created and organized under the laws of the Commonwealth of Puerto Rico and engaged in the business of importing and distributing PVC piping, construction and other products in Puerto Rico.

20. Plaintiff, CARIBBEAN PRODUCE EXCHANGE, LLC, is a limited liability company created and organized under the laws of the Commonwealth of Puerto Rico and engaged in the business of importing and distributing food and produce in Puerto Rico.

21. Plaintiff, MADEARTE FURNITURE IMPORTS & DISTRIBUTORS, INC., is a corporation created and organized under the laws of the Commonwealth of Puerto Rico and engaged in the business of importing and distributing furniture in Puerto Rico.

22. Plaintiff, EMPRESAS BERRIOS, INC. d/b/a MUEBLERIAS BERRIOS, is a corporation created and organized under the laws of the Commonwealth of Puerto Rico and engaged in the business of importing and distributing furniture in Puerto Rico.

23. Plaintiff, EMPRESAS BERRIOS INVENTORY AND OPERATIONS INC., is a corporation created and organized under the laws of the Commonwealth of Puerto Rico and engaged in the business of importing and distributing furniture in Puerto Rico.

24.    Plaintiff, MADERAS 3C, INC., is a corporation created and organized under the laws of the Commonwealth of Puerto Rico and engaged in the business of importing and selling hardware products, lumber, construction materials, among others, in Puerto Rico.

25.    Plaintiffs, MARJOR & SONS, INC. and M.M. FASHION & DESIGN, INC. are corporations created and organized under the laws of the Commonwealth of Puerto Rico and engaged in the business of importing, distributing, and clothing, shoes, and other fashion items in Puerto Rico.

26.    Plaintiff, PAPELERA DEL PLATA, INC. is a corporation created and organized under the laws of the Commonwealth of Puerto Rico and engaged in the business of importing and distributing paper products in Puerto Rico.

27.    Plaintiff, THE PAPERSHOUSE CORP. is a corporation created and organized under the laws of the Commonwealth of Puerto Rico and engaged in the business of importing and distributing janitorial and food service supplies in Puerto Rico.

28.    Defendant The Puerto Rico Ports Authority ("PRPA") is a public corporation created and organized under the provisions of its organic act ("Puerto Rico Ports Authority Act"), *23 P.R. Laws Ann. §§ 331-52, et seq.*, with capacity to sue and be sued.

PRPA is not an arm of the state for purposes of the Eleventh Amendment.

29. Defendant S2 Services Puerto Rico LLC, ("S2 Services") is a limited liability company created and organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business at Metro Office Park, Microsoft Building, Suite 2001, Guaynabo, Puerto Rico, 00968.

30. Defendant Rapiscan Systems, Inc. ("Rapiscan") is a corporation created and organized under the laws of the State of California with offices located at 2085 Columbia St., Torrance, California, 90503.[1]

31. At all relevant times, S2 Services and Rapiscan have acted as a contractor to and agent for the Puerto Rico Ports Authority ("PRPA"), by among other things, performing shipping container scanner installations, operations, and maintenance. At all times relevant, S2 Services and Rapiscan were therefore acting under color of state law for the purpose of *42 U.S.C. § 1983.*

32. JOHN DOE, JANE DOE, ABC CORP., and XYZ CORP, are persons and entities liable for the causes set forth in this action and whose identity is unknown at this time.

---

[1] Rapiscan is the sole member of S2 Services. Therefore, S2 services is considered a citizen of the State of California for purposes of 28 U.S.C. § 1332.

33. UNKNOWN INSURANCE COs. are insurance companies that issued policies of insurance to cover and respond for the liability of all defendants as set forth in this action.

### IV. FACTUAL ALLEGATIONS

34. On December 17, 2009, PRPA signed an agreement with Rapiscan Systems, Inc. ("Rapiscan") where the latter became the entity allegedly authorized to conduct all services of non-intrusive scanning of shipping containers entering Puerto Rico through the port of San Juan.

35. PRPA executed the agreement for non-intrusive cargo scanning services with Rapiscan even though it had no delegated legal authority or police powers to inspect cargo. Therefore, the PRPA/Rapiscan Agreement is null and void *ab initio*.

36. On or about August 6, 2010, Rapiscan assigned of its rights and obligations under its agreement with PRPA to its wholly owned subsidiary S2 Services Puerto Rico LLC.

37. This assignment caused the PRAPA/Rapiscan Agreement to become null and void as it was made in violation of Article 200 of the Puerto Rico Political Code, 3 *P.R. Laws Ann. § 901,* which provides in part that:

> Without prejudice to the exception provided in the three (3) final paragraphs of § 902 of this title, no contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer **shall** cause the annulment of the contract or

9

order transferred as far as the Commonwealth of Puerto
Rico is concerned. (emphasis ours)

38.    The assignment was intended to create a scheme by
which Defendants induced Plaintiffs and the general public
to believe that they were duly authorized by the
Commonwealth of Puerto Rico to impose and collect a tariff
called the Enhanced Security Fee, as more fully described
hereafter.

39.    On September 2, 2011, PRPA approved **Regulation 8067**
titled REGULATION FOR IMPLEMENTING THE NECESSARY MEANS TO
GUARANTEE AN EFFICIENT FLOW OF COMMERCIAL TRAFFIC IN THE
SCANNING OF INBOUND CARGO CONTAINERS, TO IMPROVE SECURITY AND
SAFETY AT THE PORT FACILITIES, AND/OR TO OTHERWISE IMPLEMENT THE
PUBLIC POLICY OF THE COMMONWEALTH OF PUERTO RICO DELEGATED UPON
THE PORTS AUTHORITY, to enable the defendants to implement the
cargo scanning program.

40.    PRPA approved Regulation 8067 even though it had no
delegated legal authority to inspect cargo. Therefore,
Regulation 8067 is null and void *ab initio*.

41.    According to Regulation 8067, the ocean carriers or
their agents, must pay PRPA the Enhanced Security Fee to recover
the costs incurred by PRPA in the scanning program. Ocean
carriers and their agents, in turn, collected the Enhanced
Security Fees from shippers like Plaintiffs who import cargo

through the maritime ports of San Juan.  Thus, in furtherance of their scheme, Defendants and PRPA purposely turned ocean carriers and their agents into Defendant's Enhanced Security Fees collection agents.

42.  Regulation 8067 provides that its effectiveness would automatically expire on June 30, 2014, unless such term was extended, modified or amended prior its expiration.

43.  PRPA did not extend, modify or amend Regulation 8067 prior to June 30, 2014, but continued to implement the cargo scanning program.

44.  On October 28, 2016, the Puerto Rico Court of Appeals ordered that PRPA's board of directors and executive director immediately cease and desist from implementing the cargo scanning program under Resolutions and Regulations approved after the expiration of Regulation 8067. *See* Cámara de Mercadeo v. Autoridad de los Puertos, Case No. KLRA2016-1056.

45.  The Court of Appeals concluded that the Resolutions and Regulations approved after the expiration of Regulation 8067 failed to comply with the requirement of the Puerto Rico Uniform Administrative Procedures Act and acted *ultra vires* when it issued.  Id.  The Court of Appeals found that Regulation 8067 had already expired on June 30, 2014, and it could not be retroactively revived as PRPA intended.  Id. The Judgment entered by the Court of Appeals is now final.

11

46.   Consequently,   Defendants   acted   *ultra   vires*   in collecting ESF (Enhanced Security Fees) in connection with their cargo scanning program:

    a. Since at least 2009 when it executed the PRPA/Rapiscan Agreement despite having no delegated police powers to inspect cargo under the Puerto Rico Ports Authority Act, Supra, the Dock and Harbor Act of Puerto Rico, *23 P.R. Laws Ann., §§ 2101-2801*, Act 12 or any other law for that matter; in the alternative

    b. Since August 6, 2010 when, the Rapiscan assigned the PRPA/Rapiscan Agreement to S2 Services in contravention of Article 200 of the Puerto Rico Political Code, *3 P.R. Laws Ann. 901*; in the alternative

    c. Since July 1, 2014, when the Defendants had no regulatory authority to collect Enhanced Security Fees due to the expiration or Regulation 8067.

47.   Furthermore, Defendants have continued to assess ESFs for Plaintiffs' and other Class members' non-containerized cargo such as cars, ISO tanks, cargo on platforms, and other types cargo which are imported without using shipping containers, even though the US District Court for the District of Puerto Rico found that the assessment of ESF's shippers who neither use nor have the privilege of using the scanning facilities violates the Commerce Clause and enjoined Defendants from collecting ESFs in

those cases.   See <u>De Mercadeo v. Vazquez</u>, No. 11-1978 (BJM), 2013 U.S. Dist. LEXIS 150275, at *44 (D.P.R. Oct. 16, 2013).

48.  Defendants have also continued to assess ESFs on Plaintiffs' cargo entering the Port of San Juan, through some of the marine terminals without access to scanning stations, even though the US District Court of the District of Puerto Rico held that assessment of the ESF's in these terminals violated the Commerce Clause and enjoined Defendants from doing so.  See Id.

49.  Defendants have also continued to assess ESFs on Plaintiffs' cargo entering the Port of San Juan that are not being scanned at all regardless of whether the terminal has access to scanning facilities, even though the US District Court of the District of Puerto Rico held assessment of ESFs for cargo that do not use the scanning facilities violated the Commerce Clause and enjoined Defendants from doing so.  See Id.

50.  As a direct and proximate result of Defendants' negligent and illegal acts, Plaintiffs and other shippers similarly situated have sustained a loss and suffered general, special and consequential damages in an amount unknown at this time, but believed to be in excess of $150,000,000.00.  Said damages include, the moneys paid in ESFs, administrative charges paid to ocean carriers and their agents related to the collection of the ESFs and other damages to be determined.

51. At all relevant times herein, Defendants jointly, illegally and in concert, collected and derived economic benefit from the Enhanced Security Fees under color of law and authority, thereby depriving Plaintiffs of their property in violation of its constitutional rights.

52. All of the alleged facts are part of an ongoing pattern of conduct that continues to this date.

## V. CLASS ALLEGATIONS

### A. Class Definition

53. The Class is identified as all shippers in Puerto Rico who have paid and will continue to pay ESFs to the Defendants: (1) since the inception of the cargo inspection program; (2) and/or since the expiration of Regulation 8067 on June 30, 2014, until a new valid Regulation was approved; and/or (3) have paid ESFs for cargo which was never scanned; and/or (4) have paid ESFs for cargo imported through marine terminals without access to scanning facilities.

### B. Numerosity

54. At this time Plaintiffs do not know the exact size of the class but, upon information and belief, the class is composed of thousands of shippers who imported cargo through the ports of San Juan since September of 2011, when the cargo scanning program started.

55.   Plaintiffs believe that the Class members are so numerous that joinder of all members is impracticable.   The number and identities of Class members is administratively feasible can be determined through appropriate discovery and identification from Defendants' uniform records and objective criteria.

## C. Commonality

56.  There are questions of law and/or fact common to the class, including at least the following:

a. Whether PRPA acted *ultra vires* in entering the PRPA/Rapiscan Agreement, approving regulations to implement the program and collects ESFs, and implementing the scanning program;

b. Whether the PRPA/Rapiscan Agreement is void *ab initio* due to PRPA's lack of delegated police powers under its enabling act or other legislation to inspect cargo;

c. Whether the PRPA/Rapiscan Agreement was annulled when Rapiscan assigned its rights and obligations under the Agreement to S2 Services;

d. Whether the Defendants illegally collected Enhanced Security Fees from shippers since July 1, 2014, after Regulation 8067 expired;

e. Whether the collection of the ESFs for cargo which was not scanned or entering through terminals without access

to scanning facilities deprives Plaintiffs and Class members of their rights under the Commerce Clause;

f. Whether Defendants were unjustly enriched by collecting Enhanced Security Fees from Plaintiffs and class members;

g. Whether Defendants unduly collected Enhanced Security Fees from Plaintiffs and class members;

h. Whether Plaintiffs and Class members have sustained damages, and if so, what is the proper measure of those damages.

## D. Typicality

57.   Plaintiffs have the same interests in this matter as all other members of the Class, and their claims are typical of all members of the Class.

## E. Adequacy

58.   Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in the prosecution and successful resolution of consumer class actions. Plaintiffs will fairly and adequately represent the interests of the Class members and do not have interests adverse to the Class members.

## F. The Prerequisites of Rule 23(b)(1) are Satisfied

59.   The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

60.   The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the action, or substantially impair or impede ability of other members of the Class to protect their interests.

**G. The Prerequisites of Rule 23(b)(2) are Satisfied**

61.   Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on ground generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

62.   The predominant relief sought by Plaintiffs and the Class is both injunctive and declaratory.

63.   The monetary relief sought herein is incidental to the requested injunctive and declaratory relief as it flows directly from Defendants' liability to the class as a whole on the claims forming the bases of the injunctive and declaratory relief and the damages are capable of computation by means of objective standards.

64.   Even in the absence of a possible monetary recovery, reasonable class members would bring the suit to obtain the injunctive or declaratory relief sought.

65.  The injunctive or declaratory relief sought is be both reasonably necessary and appropriate were the Plaintiffs to succeed on the merits.

66.  The Class, by its very nature, is a homogeneous and cohesive group few or no conflicting interests among its members.

## H. The Prerequisites of Rule 23(b)(3) are Satisfied

67.  If the Class is not certified under Rule 23(b)(1) or (b)(2) then certification under (b)(3) is appropriate because the common questions of law and fact enumerated herein predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary relief at issue for most individual Class member. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the class.

68. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. Individual Class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class members will affect each Class member equally;

b. Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

c. This litigation is properly concentrated in this forum, which is where PRPA and S2 Services are headquartered and where all ESFs where assessed and collected by Defendants; and

d. There are no difficulties in managing this case as a class action.

## VI. CAUSES OF ACTION

### COUNT I – VIOLATION OF CONSTITUTIONAL RIGHTS

**A. Commerce Clause Violations**

69. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs, as if fully set forth herein.

70. Plaintiffs bring this claim under *42 U.S.C. § 1983*, against Defendants acting in an official capacity and under color of state law. Alternatively, co-defendants Rapiscan

Systems, Inc. and S2 Services Puerto Rico, LLC were agents of PRPA or willful participants in a joint activity with PRPA.

71.  Defendants, by assessing and collecting ESFs on cargo that is neither scanned nor has the privilege of using the scanning facilities, have deprived Plaintiffs of their right to engage in interstate and/or foreign commerce free from state interference, a right secured by Article I, § 8, cl. 3 of the United States Constitution, commonly known as the Commerce Clause.

72.  At all relevant and material times, PRPA contracted with the Rapiscan and/or S2 Services to perform the non-intrusive scanning and inspection of shipping containers arriving through the ports of San Juan, Puerto Rico.

73.  When performing these functions, Rapiscan and S2 Services did so purporting to have governmental authority delegated to it by PRPA.

74.  Consequently, Rapiscan and S2 Services were, are and will continue to act under color of state law when performing these functions and when collecting the challenged fees.

75.  As a direct and proximate result of Defendants' violation of *42 U.S.C. § 1983*, Plaintiffs have suffered injuries and damages.

76.  Defendants are joint and severally liable for the damages prayed herein.

**B. Fifth and Fourteenth Amendment Violations**

77. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs, as if fully set forth herein.

78. Plaintiffs have a property interest protected by the Fifth and Fourteenth Amendments of the United States Constitution in not being forced into paying unlawfully scanning fees, thereby being deprived of their property without due process.

79. Through the above described actions, all Defendants deprived Plaintiffs of their property illegally, under color of law and authority, and without due process.

80. As a direct and proximate result of Defendants' violation of *42 U.S.C. § 1983*, Plaintiffs have suffered injuries and damages.

81. Defendants are joint and severally liable for the damages prayed herein.

COUNT II – UNJUST ENRICHMENT

82. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs, as if fully set forth herein.

83. Under the civil law of Puerto Rico, "[w]hen there is no statute applicable to the case at issue, the court shall decide in accordance with equity, which means that natural justice, as embodied in the general principles of jurisprudence and in accepted and established usages and customs shall be

taken into consideration." *31 P.R. Laws Ann. § 7*. Under this civil-law doctrine of equity, a plaintiff may recover for unjust enrichment in an *actio de in rem verso* (reimbursement action). See <u>Snyder v. Champion Realty Corp.</u>, 631 F.2d 1253, 1254 n.2 (5th Cir. 1980) (citing analogue to *31 P.R. Laws Ann. § 7* under Louisiana Civil Code).

84. In order to sufficiently plead an unjust enrichment, the following requirements must be present: 1) the existence of enrichment; 2) a correlative loss; 3) a nexus between the loss and the enrichment; 4) a lack of cause for the enrichment; and 5) the absence of a legal precept excluding the application of enrichment without cause." <u>Hatton v. Mun. de Ponce</u>, 134 D.P.R. 1001, 1994 Juris P.R. 2 (1994).

85. In this case: (1) Defendants have enriched themselves by collecting Enhanced Security Fees from Plaintiffs, (2) Plaintiffs have lost money by paying the fees collected by Defendants, (3) there is a direct relation between Plaintiffs' economic loss and Defendants' enrichment, (4) there is no cause for the enrichment due to the illegality of the Enhanced Security Fee since it first started, or in the alternative, since July 1, 2014, when Regulation 8067 expired; and (5) there is no legal precept that would exclude the application of enrichment without a cause.

86.   In light of the foregoing, it would be inequitable for Defendants to be permitted to retain the benefit of the revenue they received from their unlawful cargo scanning program and fee collection activities.

87.   Accordingly, Plaintiffs seek disgorgement and/or restitution of these benefits, as well as, consequential damages including, but not limited to, "administrative fees" it paid to various carriers.

88.   Defendants are jointly and severally liable for the damages prayed herein.

**COUNT III – UNDUE COLLECTION (*SOLUTO INDEBITI*)**

89.   Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs, as if fully set forth herein.

90.   Article 1795 of the Puerto Rico Civil Code provides that "[i]f a thing is received when there was no right to claim it and which, through an error, has been unduly delivered, there arises an obligation to restore the same."  This cause of action is commonly known in civil law as "Restitution of the Improperly Collected" or "*cobro de lo indebido*" in Spanish.

91.   Plaintiffs are entitled to restitution under the *soluto indebiti* doctrine if: (1) a payment was made with the intention of extinguishing an obligation; (2) the payment made does not have just consideration or cause, in other words, that there is no legal obligation between the one who makes the

payment and the one who collects it; and (3) the payment was made by error and not by mere liberality or any other concept. E.L.A. v. Crespo-Torres, 2011 TSPR 15; Sepúlveda v. Depto. de Salud, 145 D.P.R. 560, 566 (1998).

92.  Plaintiffs paid the Enhanced Security Fees with the intent of extinguishing the obligation imposed by Defendants. Because PRPA had no delegated legal authority to inspect cargo and enter the PRPA/Rapiscan Agreement, and/or because the PRPA/Rapiscan Agreement was annulled when assigned to S2 Services, and/or because Regulation 8067 expired on June 30, 2014, Plaintiff had no legal obligation to make such payments. Finally, Plaintiffs made those payments by error because it was under induced that these Defendants were lawfully collecting the challenged fees.

93.  Therefore, Plaintiffs are entitled to the restitution of all Enhanced Security Fees as described above.

94.  Defendants are joint and severally liable for the damages prayed herein.

### COUNT IV – ALTER EGO

95.  Plaintiff repeat and reallege the allegations set forth in the preceding paragraphs, as if fully set forth herein.

96.  PRPA's illegal implementation of the scanning program and Rapiscan's subsequent assignment of the PRPA/Rapiscan Agreement to S2 Services induced Plaintiff and the general

public into believing that they were acting duly authorized by the Commonwealth of Puerto Rico to impose, collect and benefit from the Enhanced Security Fees, thereby committing fraud, promoting injustice, evading statutory obligations, violating public policy, inequitably depriving Plaintiffs of their property, and covering up fraudulent or criminal activity.

97.  S2 Services is as an alter ego of Rapiscan created to promote and in furtherance of the aforementioned scheme.

98.  As a result, Plaintiffs hereby request a declaration that S2 Services is an alter ego of Rapiscan.

**WHEREFORE,** Plaintiffs hereby demand that the Court enter Judgment against all defendants:

a) Declaring that the Defendants' actions, described fully above, violate *§ 1983* and constitute unjust enrichment and undue collection;

b) Enjoining the Defendants from engaging in the unlawful conduct set forth herein;

c) Awarding Plaintiffs and class members any monies paid pursuant to the unlawful conduct set forth herein, all damages recoverable under applicable law, pre and post-judgment interest, attorneys' fees and allowable costs pursuant to applicable law;

d) A trial by jury; and

e) Such other relief as this Court deems just and equitable.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 5th day of April, 2017.

s/ *Luis N. Saldaña*
**LUIS N. SALDAÑA**
USDC-PR No.: 208001
E-mail: lsaldana@scvrlaw.com

s/ Ian P. Carvajal Zarabozo
**IAN P. CARVAJAL ZARABOZO**
USDC-PR No.: 212003
e-mail: icarvajal@scvrlaw.com

s/ Manuel Sosa
**MANUEL SOSA**
USDC-PR No.: 218807
e-mail: msosa@scvrlaw.com

**SALDAÑA, CARVAJAL & VÉLEZ-RIVÉ, P.S.C.**
#166 Ave de la Constitución.
San Juan, PR 00901
Tel: (787) 289-9250
Fax: (787) 289-9253

s/Alberto J. Castañer
**ALBERTO J. CASTAÑER**
USDC-PR No. 225706
CASTAÑER LAW OFFICES PSC
MAI Center Ste 204
2000 Kennedy Ave.
San Juan, PR 00920
Tel. (787) 707-0802
Fax: (888) 227-5728
Attorney for Plaintiff
E-mail: manager@castanerlaw.com