# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

DANTZLER, INC., *et al.*,

    **Plaintiffs**,

         **v.**

PUERTO RICO PORTS AUTHORITY, *et al.*,

    **Defendants.**

**Civil No.** 17-1447 (FAB)

## OPINION AND ORDER[1]

BESOSA, District Judge.

Defendants S2 Services Puerto Rico, LLC ("S2") and Rapiscan Systems, Inc. ("Rapiscan") move to dismiss the plaintiffs' amended complaint pursuant to Federal Rule of Civil of Procedure 12(b)(1) ("Rule 12(b)(1)") and Federal Rule Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (Docket No. 55.) Defendant Puerto Rico Ports Authority ("PRPA") also moves to dismiss the plaintiffs' amended complaint pursuant to Rule 12(b)(1), Rule 12(b)(6), and Federal Rule of Civil Procedure 12(b)(7) ("Rule 12(b)(7)"). (Docket No. 85.) For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** S2, Rapiscan, and PRPA (collectively, "defendants")'s motions to dismiss (Docket Nos. 55 and 85.) The

---

[1] Jeremy S. Rosner, a third-year student at Emory University School of Law, assisted in the preparation of this Opinion and Order.

defendants' motion to stay discovery pending the ruling on these motions is moot (Docket No. 89.)

## I.   Factual Background

The Court construes the following facts from the amended complaint "in the light most favorable to the plaintiffs" and "resolve[s] any ambiguities" in the plaintiffs' favor.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 17 (1st Cir. 2011) (discussing the Rule 12(b)(6) standard of review); see Viqueira v. First Bank, 140 F.3d 12, 15 (1st Cir. 1998) (discussing the Rule 12(b)(1) standard of review).

On December 17, 2009, PRPA and Rapiscan signed an agreement allowing Rapiscan "to conduct all services of non-intrusive scanning of shipping containers entering Puerto Rico through the port of San Juan," although PRPA "had not been expressly delegated legal authority or police powers to inspect cargo." (Docket No. 19 at pp. 9-10.)  About eight months later, Rapiscan "assigned all of its purported rights and obligations under its agreement with PRPA to [S2], its wholly owned subsidiary."  Id. at p. 10.

In February 2011, PRPA conceded that "it is not the government instrumentality with the proper legal jurisdiction and authority to intervene as of right in [the inspection of cargo containers]" in a "Memorandum of Understanding" executed by PRPA and the Puerto Rico Department of Treasury.  See Docket No. 19 at pp. 10-11

(alteration in original).  PRPA, nonetheless, approved Regulation 8067, which required "the ocean carriers or their agents" to "pay PRPA the Enhanced Security Fee to recover the costs incurred by PRPA in the scanning program."  Id. at p. 11.[2]  "Ocean carriers and their agents, in turn, collected Enhanced Security Fees from shippers like named Plaintiffs . . . who import cargo through the maritime ports of San Juan."  Id. (internal quotation marks omitted).

On October 16, 2013, the Court enjoined Puerto Rico "from collecting enhanced security fees from shipping operators that are not being scanned pursuant to Regulation [] 8067."  Cámara de Mercadeo, Industria y Distribución de Alimentos v. Vázquez, 2013 WL 5652076, at *15 (D.P.R. Oct. 16, 2013) (McGiverin, Mag. J.), aff'd on other grounds, Industria y Distribución de Alimentos v. Trailer Bridge, 797 F.3d 141 (1st Cir. 2015).  The Court found that the "enhanced security fee is unconstitutional as applied to shipping operators without scanning facilities because it (1) does not fairly approximate their use or privilege of using port scanning facilities, and (2) is excessive relative to the benefits conferred."  Id. at *12.

---

[2] Regulation 8067 is titled, "Regulation for Implementing the Necessary Means to Guarantee an Efficient Flow of Commercial Traffic in the Scanning of Inbound Cargo Containers, to Improve Security and Safety at the Port Facilities, and/or to Otherwise Implement the Public Policy of the Commonwealth of Puerto Rico Delegated upon the Ports Authority."  (Docket No. 19 at p. 11.)

Regulation 8067 was set to expire in June 30, 2014, "unless such term was extended, modified or amended *prior* [to] its expiration." (Docket No. 19 at p. 12.) PRPA did not extend, modify, or amend Regulation 8067, "but continued to implement the cargo scanning program despite and beyond its expiration." Id.

In October 2016, the Puerto Rico Court of Appeals ordered PRPA "to immediately cease and desist from carrying out any procedure under [Regulation 8067]" because Regulation 8067 "was not in force." Cámara de Mercadeo, Industria y Distribución de Alimentos v. Autoridad de los Puertos, 2016 WL 7046805, at *8 (P.R. Ct. App. Oct. 28, 2016) (official translation at Docket No. 73 at p. 9). Regulation 8067 required "the extension of the established term of validity" to "be done during its term," and because Regulation 8067 was not extended prior to its expiration, the Puerto Rico Court of Appeals held that the "decree had no effect." Id. at *7 (official translation at Docket No. 73 at p. 8).

The defendants, nevertheless, have "acted and/or continued to act in collecting [] Enhanced Security Fees in connection with the cargo scanning program." (Docket No. 19 at p. 13.) The defendants have also continued to collect enhanced security fees from the plaintiffs for "non-containerized cargo such as cars, ISO tanks, cargo on platforms, and other types of cargo which are imported without using shipping containers," as well as "cargo entering the

Port of San Juan, through some marine terminals which do not have access to scanning stations," and "cargo . . . that [is] not being scanned at all," Docket No. 19 at pp. 13-15, despite the Court's ruling that the defendants cannot collect such fees from "shipping operators that are not being scanned pursuant to Regulation [] 8067." Vázquez, 2013 WL 5652076, at *15. The defendants have "collected and derived economic benefit from the Enhanced Security Fees," and the plaintiffs have sustained "substantial and continuing economic losses" in amounts "believed to be in excess of $150,000,000.00" because of the defendants' actions. (Docket No. 19 at p. 15.)

## II. Procedural History

The plaintiffs commenced this action on April 5, 2017 "as entities that paid fees for the scanning cargo imported into Puerto Rico through the maritime port of San Juan that were illegally collected by Defendants" in violation of federal and Puerto Rico law. (Docket No. 1 at p. 2; Docket No. 19 at pp. 2-3.) They filed an amended complaint approximately five months later seeking relief pursuant to 42 U.S.C. section 1983 ("section 1983"), based on the Fifth Amendment, the Fourteenth Amendment, and the Commerce Clause, and pursuant to Puerto Rico civil code, articles 7, 200, and 1795. Docket No. 19 at pp. 21-30; see 42 U.S.C. § 1983; P.R. Laws Ann. tit. 3, §§ 7, 901, 5121.

On December 19, 2017, S2 and Rapiscan moved to dismiss the amended complaint. (Docket No. 55.) According to S2 and Rapiscan, the plaintiffs "lack standing to challenge the Enhanced Security Fees at issue because they did not pay them—the fees were imposed on ocean freight carriers who independently decided whether, and in what amount, to pass their own costs onto merchants such as Plaintiffs." Id. at p. 1. S2 and Rapiscan argue that the amended complaint "fails to state cognizable claims against Rapiscan and S2 under 42 U.S.C. § 1983 because it does not allege that Rapiscan or S2 individually caused any violation of Plaintiffs' alleged constitutional rights." Id. In the alternative, S2 and Rapiscan contend that they are "entitled to qualified immunity from suit under § 1983 as a former and current government contractor, respectively, sued solely on the basis of their contracted services." Id. S2 and Rapiscan also maintain that the amended complaint "fails to state claims for unjust enrichment and undue collection under Puerto Rico law because it does not allege that Rapiscan or S2 received compensation for their services without cause." Id.

On May 23, 2018, PRPA moved to dismiss the amended complaint. (Docket No. 85.) Like S2 and Rapiscan, PRPA asserts that the plaintiffs' claims are "improperly anchored on their carriers' independent decisions to charge operating fees" and thus do "not

satisfy the constitutional standing requirements." Id. at p. 1.

In the alternative, PRPA argues that it "is an arm of the state

cloaked with sovereign immunity," which "shields it from legal

actions that precisely target its governmental functions." Id. at

p. 2. PRPA also contends that:

> (1) Plaintiffs' Section 1983 claims are mostly time
> barred; (2) Plaintiffs have failed to include the Ocean
> Freight Carriers, who are indispensable to any
> litigation challenging the collection of [enhanced
> security fees]; (3) the [] amended complaint fails to
> state a cause of action for unjust enrichment or undue
> collection; (4) Plaintiff's regulatory takings claim is
> flawed, inasmuch as it is incorrectly based on PRPA's
> alleged *ultra vires* acts; and (5) Plaintiffs' claim
> regarding PRPA's alleged *ultra vires* conduct are
> inapposite.

Id. While the Court disagrees with the defendants' arguments

regarding standing and immunity, the Court agrees that the

plaintiffs fail to establish takings, procedural due process, and

substantive due process claims pursuant to section 1983. The

Court, nevertheless, finds that the plaintiffs state a valid

Commerce Clause claim pursuant to section 1983, as well as Puerto

Rico law claims.

### III. Standards of Review

Rule 12(b) permits a party to assert defenses against claims

for relief. Fed. R. Civ. P. 12. A court, nonetheless, "must

construe the complaint liberally," Aversa v. United States, 99

F.3d 1200, 1210 (1st Cir. 1996), and a complaint that adequately

states a claim may still proceed even if "recovery is very remote and unlikely." Ocasio-Hernández, 640 F.3d at 13 (internal quotation marks and citations omitted); see Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012) ("In considering the pre-discovery grant of a motion to dismiss for lack of standing, [courts] accept as true all well-pleaded factual averments in the plaintiff's . . . complaint and indulge all reasonable inferences therefrom in his favor.") (internal citation omitted).

Rule 12(b)(1) allows a court to dismiss a complaint when a plaintiff fails to establish subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. See Droz-Serrano v. Caribbean Records Inc., 270 F. Supp. 2d 217, 217 (D.P.R. 2003) (García-Gregory, J.) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). "As courts of limited jurisdiction, federal courts have the duty to construe their jurisdictional grants narrowly." Fina Air, Inc. v. United States, 555 F. Supp. 2d 321, 323 (D.P.R. 2008) (Besosa, J.) (citing Alicea-Rivera v. SIMED, 12 F. Supp. 2d 243, 245 (D.P.R. 1998) (Fusté, J.)).

A defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must

contain sufficient factual matter "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A court must decide whether the complaint alleges sufficient facts to "raise a right to relief above the speculative level." Id. at 555.

A party may move for dismissal of an action for failure to join a necessary party pursuant to Federal Rule of Civil Procedure 19 ("Rule 19"). Fed. R. Civ. P. 12(b)(7). Courts employ a two-step approach to establish whether an action should be dismissed pursuant to Rule 12(b)(7). See United States v. San Juan Bay Marina, 239 F.3d 400, 405 (1st Cir. 2009); Fed. R. Civ. P. 19. First, a court examines "whether the [party] fits the definition of those who should 'be joined if feasible' under [R]ule 19(a)." Cruz-Gascot v. HIMA-San Pablo Hosp. Bayamón, 728 F. Supp. 2d. 14, 26 (D.P.R. 2010) (Besosa, J.). Second, a court ascertains whether joinder is feasible. Id. at 27.

**IV.  Standing**

The defendants argue that the plaintiffs do not have standing to raise their claims in federal court. (Docket No. 55 at pp. 14-16; Docket No. 85 at pp. 16-22.) The defendants invoke Rule 12(b)(1) to dismiss the amended complaint for lack of jurisdiction. Id.

A.    **Legal Standard**

"The Constitution limits the judicial power of the federal courts to actual cases and controversies." Katz, 672 F.3d at 71 (citing U.S. Const. art. III, § 2, cl. 1). "A case or controversy exists only when the party soliciting federal court jurisdiction . . . demonstrates 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues.'" Id. (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)). A "personal stake" in the outcome of the case or controversy is otherwise known as "standing." See id. "If a plaintiff lacks standing to bring a matter before a court, the court lacks jurisdiction to decide the merits of the underlying case." Libertad v. Welch, 53 F.3d 428, 436 (1st Cir. 1995) (citation omitted).

To establish standing, a plaintiff must demonstrate three elements: "[f]irst, the plaintiff must have suffered an injury in fact," "[s]econd, there must be a causal connection between the injury and the conduct complained of," and "[t]hird, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." Id. at 561. "[E]ach element must

be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Id.[3]

A plaintiff must demonstrate a "sufficiently direct causal connection between the challenged action and the identified harm." Katz, 672 F.3d at 71 (citing Lujan, 504 U.S. at 560). While "this causal connection cannot be overly attenuated," Donahue v. City of Boston, 304 F.3d 110, 115 (1st Cir. 2002) (citation omitted), "a plaintiff need not allege that the defendant's conduct was the proximate cause of the plaintiff's injuries." Connor B. ex rel. Vigurs v. Patrick, 771 F. Supp. 2d 142, 152 (D. Mass. 2011) (citations omitted). A plaintiff must "merely [show] that the injury was 'fairly traceable' to the

---

[3] "Injury in fact" is an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotation marks and citation omitted). "A particularized injury is one that 'affect[s] the plaintiff in a personal and individual way." Pagán v. Calderón, 448 F.3d 16, 27 (1st Cir. 2006) (alteration in original) (quoting Lujan, 504 U.S. at 560 n.1). The injury "may be shared by many others, but may not be common to everyone." Dubois v. United States Dep't of Agric., 102 F.3d 1273, 1281 (1st Cir. 1996) (citing Warth v. Seldin, 422 U.S. 490, 499 (1975); see United States v. Students Challenging Reg. Agency Procs., 412 U.S. 669, 687-88 (1973)). "[T]he redressability element of standing requires that the requested relief directly redress the injury alleged." Mass. Indep. Certification, Inc. v. Johanns, 486 F. Supp. 2d 105, 116 (D. Mass. 2007) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 105-09 (1998)). A "[p]laintiff must establish that it is 'likely,' as opposed to merely 'speculative,' that its claimed injuries will be redressed by a favorable decision." Id. (quoting Lujan, 504 U.S. at 560). A complaint that "prays for monetary damages as a means of ameliorating the asserted wrong" is sufficient to establish redressability. Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 290 (1st Cir. 2013).

challenged action of the defendant." <u>Vigurs</u>, 771 F. Supp. 2d at 152 (quoting <u>Lujan</u>, 504 U.S. at 590); <u>see</u> <u>Focus on the Family v. Pinellas Suncoast Transit Auth.</u>, 344 F.3d 1263, 1273 (11th Cir. 2003) ("[E]ven harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes."). When "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else* . . . . causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well." <u>Lujan</u>, 504 U.S. at 562 (alterations in original). A sufficient causal connection may thus be established even if a plaintiff is not "the object of the government action or inaction." <u>Id.</u> (citations omitted).

## B. Discussion

The plaintiffs establish an adequate "casual connection between the challenged action and the identified harm" because the enhanced security fees paid by the plaintiffs are "fairly traceable" to the defendants. <u>See</u> <u>Katz</u>, 672 F.3d at 71 (citing <u>Lujan</u>, 504 U.S. at 560); <u>Vigurs</u>, 771 F. Supp. 2d at 152. The defendants argue that the plaintiffs have not demonstrated the causal connection required to establish the plaintiffs' standing because the plaintiffs' alleged injuries are "not fairly traceable

to Defendants." Docket No. 55 at p. 15; see Docket No. 85 at

pp. 17-22.[4] The defendants, however, imposed enhanced security

fees on ocean freight carriers, and the ocean freight carriers

collected those fees from the plaintiffs. (Docket No. 19 at

p. 11.) Causality may be established when a plaintiff is not the

direct "object of the government action," Lujan, 504 U.S. at 562

(citations omitted), because "even harms that flow indirectly from

the action in question can be said to be 'fairly traceable' to

that action for standing purposes." Focus on the Family, 344 F.3d

at 1273. At minimum, the plaintiffs were allegedly injured

indirectly by the government regulation. The plaintiffs' alleged

injuries are "fairly traceable" to the defendants. See id.; Warth

v. Seldin, 422 U.S. 490, 510 (1975) ("[E]nforcement of the

challenged [governmental] restriction against the [vendor] would

result indirectly in the violation of third parties' rights."); In

re Pharm. Indus. Average Wholesale Price Litig. v. Abbott Labs.,

339 F. Supp. 2d 165, 172 (D. Mass. 2004) (finding that plaintiffs

had standing because they were "indirectly harmed" by the

---

[4] While PRPA also argues that the plaintiffs' "conclusory allegations do not
show a particularized grievance," PRPA fails to support this contention.
(Docket No. 85 at p. 20.) The plaintiffs allege past and continuing illicit
charges of enhanced security fees through the scanning program. (Docket No. 1
at p. 13.) The estimated charges amount to more than $150,000,000.00. Id.
The alleged injury is concrete, particularized, and actual. See Lujan, 504
U.S. at 560. The alleged injury is also "likely" to be redressed by the Court
through a monetary award. See Johanns, 486 F. Supp. 2d at 116. S2 and Rapiscan
do not dispute the plaintiffs' injury in fact or the redressability of the
plaintiffs' claims. (Docket No. 55 at p. 15.)

government regulations); <u>see also</u> <u>Sprint Commc'n Co. v. APCC</u>

<u>Servs., Inc.</u>, 554 U.S. 269, 290 (2008) ("[T]he payphone operators

assigned to the aggregators all rights, title and interest in

claims based on those injuries. . . . The aggregators, in other

words, are asserting first-party, not third-party, legal

rights.").

Because the plaintiffs' alleged injuries are concrete,

particularized, and actual, <u>see</u> <u>Lujan</u>, 504 U.S. at 560, "fairly

traceable" to the defendants, <u>see</u> <u>Vigurs</u>, 771 F. Supp. 2d at 152,

and "likely" to be redressed by the Court through monetary award,

<u>see</u> <u>Johanns</u>, 486 F. Supp. 2d at 116, the plaintiffs have standing

to bring this action.

## V.    Absolute Sovereign Immunity

PRPA contends that it is entitled to absolute sovereign

immunity from this action pursuant to the Eleventh Amendment of

the United States Constitution.  (Docket No. 85 at pp. 6-16.)

### A.    Legal Standard

Sovereign immunity "bars" private parties from

"adjudicating claims . . . against a nonconsenting State." <u>Fed.</u>

<u>Mar. Comm'n v. S.C. Ports Auth.</u>, 535 U.S. 743, 760 (2002).  The

Eleventh Amendment provides sovereign immunity for "the states

themselves and entities that are determined to be arms of a state."

<u>Pastrana-Torres v. Corporación de P.R. para la Difusión Pública</u>,

460 F.3d 124, 126 (1st Cir. 2006) (citation omitted).[5]  An entity that invokes sovereign immunity "bears the burden of showing that it is an arm of the state."  <u>Wojcik v. Mass. St. Lottery Comm'n</u>, 300 F.3d 92, 99 (1st Cir. 2002) (citation omitted).

The First Circuit Court of Appeals applies a two-step inquiry to determine whether an entity is an arm of the state. <u>Grajales v. P.R. Ports Auth.</u>, 831 F.3d 11, 17 (1st Cir. 2016) (citing <u>Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & Caribbean Cardiovascular Ctr. Corp.</u>, 322 F.3d 56, 65 (1st Cir. 2003)).  The first step "'pays deference to the state's dignitary interest in extending or withholding Eleventh Amendment immunity from an entity' by examining 'how the state has structured the entity.'"  <u>Id.</u> (quoting <u>Fresenius</u>, 322 F.3d at 65).  A court considers a "broad range of structural indicators," such as "how state law characterizes the entity, the nature of the functions performed by the entity, the entity's overall fiscal relationship

---

[5] Sovereign immunity has applied to the Commonwealth of Puerto Rico for over a century.  <u>See Porto Rico v. Rosaly</u>, 227 U.S. 270, 273 (1913); <u>see also Jusino-Mercado v. Puerto Rico</u>, 214 F.3d 34, 38-39 (1st Cir. 2000) ([W]e consistently have held that Puerto Rico's sovereign immunity in federal courts parallels the states' Eleventh Amendment immunity.") (citing cases).  The plaintiffs, however, argue that, "in light of recent Supreme Court and First Circuit case law, Puerto Rico is not a State-like sovereign entitled to such immunity."  <u>See</u> Docket No. 90 at pp. 2-4 (citing <u>Puerto Rico v. Sánchez-Valle</u>, 136 S. Ct. 1863 (2016); <u>Franklin Cal. Tax-Free Tr. V. Puerto Rico</u>, 805 F.3d 322 (1st Cir. 2015), <u>aff'd</u>, 136 S. Ct. 1938 (2016)).  Because PRPA fails to establish that it is an arm of the state, this Court declines to address whether sovereign immunity continues to apply to Puerto Rico in light of <u>Sánchez-Valle</u>, 136 S. Ct. 1863, and <u>Franklin Cal. Tax-Free Tr.</u>, 805 F.3d 322.

to the [state]," and "how much control the state exercises over the operations of the entity."  Id. at 17-18 (internal citations omitted).  "[I]f the analysis of these structural indicators reveals that 'the state clearly structured the entity to share its sovereignty,' then the entity is an arm of the state and the analysis is at an end."  Id. at 18 (quoting Fresenius, 322 F.3d at 68).

"[I]f the structural indicators 'point in different directions,'" however, a court proceeds to the second step of the analysis concerning "the risk that the damages will be paid from the public treasury."  Grajales, 831 F.3d at 18 (quoting Fresenius, 322 F.3d at 68).  "At the second step . . . '[the] analysis focuses on whether the state has legally or practically obligated itself to pay the entity's indebtedness' in the pending action."  Id. (quoting Fresenius, 322 F.3d at 68).  "If the state is so obligated, then the entity may claim the state's immunity."  Id. (citing Fresenius, 322 F.3d at 65, 68).

**B.   Discussion**

PRPA fails to demonstrate that it is an arm of the state, and is not entitled to immunity from this action.

### i.   Puerto Rico's Intent in Structuring PRPA

The structural indicators "point in different directions" and do not indicate whether Puerto Rico "clearly

structured" PRPA to be its arm.  See Grajales, 831 F.3d at 18

(quoting Fresenius, 322 F.3d at 68).  PRPA's enabling act "does

not by its terms structure [PRPA] to be an arm of the state."  See

Fresenius, 322 F.3d at 68; see also Grajales, 831 F.3d at 21-22.

According to PRPA's enabling act, PRPA is a "public corporation"

with a "legal existence and personality *separate and apart from

those of the Government* and any officials thereof."  P.R. Laws

Ann. tit. 23, § 333(a)-(b) (emphasis added).  This language

strongly suggests that PRPA is not an arm of the state.  See

Grajales, 831 F.3d at 21-22.  "[W]hen Puerto Rico has chosen to

make an entity an arm of the state, it has used other language."

Fresenius, 322 F.3d at 68.  For example, the Medical Services

Administration, a "health care entity created by the Commonwealth,

was 'created as an instrumentality of the Government of the

Commonwealth of Puerto Rico, attached to the Commonwealth

Department of Health . . . under the direction and supervision of

the Secretary of Health.'"  Id. at 69-70 (quoting P.R. Laws Ann.

tit 24, § 342(b)); see Rodríguez-Díaz v. Sierra-Martínez, 717 F.

Supp. 27, 29-31 (D.P.R. 1989) (Pieras, J.).[6]

---

[6] The Court does not address the second structural indicator involving PRPA's
functions because the "nature of the functions" performed by PRPA "does not
advance the inquiry into PRPA's status" due to PRPA's "mix of functions of which
some are characteristic of arms and others are not."  Grajales, 831 F.3d at 24
(citing Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 45 and n.17 (1994).

PRPA's overall fiscal relationship with Puerto Rico displays a high degree of separation between the entity and the state, suggesting that PRPA is not an arm of the state.  See Grajales, 831 F.3d at 25.  Pursuant to PRPA's enabling act, PRPA's debts and obligations are "deemed to be those of [PRPA], and *not* those of the Commonwealth of Puerto Rico." P.R. Laws Ann. tit. 23, § 333(b) (emphasis added).  Puerto Rico law requires PRPA to "develop strategies and take steps for financing and/or defraying any costs related to [port security]," and "the credit or power to levy taxes of the Commonwealth of Puerto Rico or of any of its political subdivisions shall not be pledged nor made liable for the payment of the principal of any loans, guarantees or bonds issued by any entity." P.R. Laws Ann. tit. 23, § 3223(a)-(b).  PRPA thus "has the funding power to enable it to satisfy judgments without direct state participation or guarantees." See Grajales, 831 F.3d at 24 (internal quotation marks and citation omitted).  Puerto Rico "generally has immunized itself from responsibility for [PRPA]'s acts or omissions, and the Commonwealth generally bears no legal liability for [PRPA]'s debts." Grajales, 831 F.3d at 25 (internal citations omitted).

"[T]he extent to which [Puerto Rico] exerts control over PRPA", however, weighs "rather strongly in favor of concluding that PRPA is an arm of the [state]." Grajales, 831 F.3d at 28.

Puerto Rico "exercises a meaningful degree of control and supervision over PRPA." Id. (citing Royal Caribbean Corp. v. P.R. Ports Auth., 973 F.2d 8, 11-12 (1st Cir. 1992)). "The governor retains formal control over PRPA through his power to appoint and remove a majority of PRPA's board members," and the state "appears to exert a great deal of control over PRPA in practice." Id. (citing Fed. Mar. Comm'n, 531 F.3d at 877-78).

Because the structural indicators "point in different directions," the Court proceeds to the second step of the analysis. See Grajales, 831 F.3d at 18 (quoting Fresenius, 322 F.3d at 68).

### ii. Puerto Rico's Financial Obligation to PRPA

PRPA fails to demonstrate that this action poses any financial risk to the Commonwealth. PRPA does not contend that the Commonwealth would be liable for a judgment against PRPA in this case,[7] nor is there any basis for the Court to conclude that the Puerto Rico Department of Treasury would pay for the damages in this action. See P.R. Laws Ann. tit. 23, § 333(b); Grajales, 831 F.3d at 29. "PRPA [was designed] to raise enough revenue to shoulder its own costs, including its litigation costs, and to bear its own debts, including (generally) any judgments

---

[7] Indeed, PRPA fails to address this step of the analysis in its briefing. See Docket No. 85 at pp. 6-16.

against it." Grajales, 831 F.3d at 29 (alteration in original).

Pursuant to the "Memorandum of Understanding" between PRPA and the

Puerto Rico Department of Treasury:

> Each of the parties waives its right to recover from the
> other, fully and irrevocably releasing the other . . .
> from any and all claims, causes of action, loss,
> liability, of any nature whatsoever . . . in connection
> with the either party alleged negligent performance of
> its obligations under this Memorandum of Understanding
> and Agreement.

(Docket No. 19 at pp. 95-96.)

          Because the Commonwealth would not be liable for a

judgment against PRPA in this action, PRPA is not entitled to

immunity from this case. Consequently, the Court **DENIES** PRPA's

absolute immunity defense (Docket No. 85).

**VI.  Section 1983 Claims**

The plaintiffs assert four claims pursuant to section 1983.

(Docket No. 19 at pp. 21-22.) The plaintiffs allege Commerce

Clause, takings, procedural due process, and substantive due

process violations. Id. The defendants move to dismiss the

plaintiffs' section 1983 claims pursuant to Rule 12(b)(6). (Docket

No. 55 at pp. 16-17, 21; Docket No. 85 at pp. 22-26.)

**A.  Legal Standard**

          Section 1983 is not itself a source of substantive

rights, but rather it "renders persons acting under color of state

law liable for constitutional and federal-law violations."

Costas-Elena v. Municipality of San Juan, 677 F.3d 1, 6 (1st Cir. 2012); see Graham v. Connor, 490 U.S. 386, 393 (1989).[8]  In order to establish a section 1983 claim, a plaintiff must adequately allege that he or she was deprived of a federally secured right and that the challenged conduct transpired "under color of state law."  See Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011).

"In distinguishing private action from state action, the general inquiry is whether 'a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or . . . is such that the actor could not have behaved in that way but for the authority of his office.'"  Zambrana-Marrero v. Suárez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999) (citation omitted).  A private entity may be deemed a state actor for the purpose of section 1983 if it:

> assumes a traditional public function when performing the challenged conduct; or if the challenged conduct is coerced or significantly encouraged by the state; or if the state has "so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity]."

---

[8] "For purposes of § 1983, Puerto Rico 'is deemed equivalent to a state.'" Costas-Elena, 677 F.3d at 6 n.5 (quoting Déniz v. Municipality of Guaynabo 285 F.3d 142, 146 (1st Cir. 2002)).

Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011)

(alterations in original) (quoting Estades-Negroni v. CPC Hosp.

San Juan Capestrano, 412 F.3d 1, 5 (1st Cir. 2005)).

A plaintiff must "plausibly plead . . . a causal

connection between the actor and the deprivation." Torres-López

v. García-Padilla, 209 F. Supp. 3d 448, 455 (D.P.R. 2016) (Pérez-

Giménez, J.) (citing Sánchez v. Pereira-Castillo, 590 F.3d 31 (1st

Cir. 2009); 42 U.S.C. § 1983). A plaintiff must "establish the

link between each particular defendant and the alleged violation

of federal rights." Id. (citing González-Piña v. Rodríguez, 407

F.3d 425, 432 (1st Cir. 2005)). "A plaintiff may do so by

indicating any 'personal action or inaction [by the defendants]

within the scope of [their] responsibilities that would make [them]

personally answerable in damages under Section 1983." Id.

(alterations in original) (citing Pinto v. Nettleship, 737 F.2d

130, 133 (1st Cir. 1984)).

### B.  Fifth Amendment Takings Claim

#### i.  Applicable Law

The Takings Clause of the Fifth Amendment

"expressly requires compensation where [the] government takes

private property 'for public use.'" Lingle v. Chevron U.S.A. Inc.,

544 U.S. 528, 543 (2005) (quoting U.S. Const. amend. V). A

plaintiff must demonstrate a "protected property interest" to

establish a takings claim.  See Santiago-Ramos v. Autoridad de Energía Eléctrica de P.R., 834 F.3d 103, 106 (1st Cir. 2016).

"The Supreme Court has recognized two types of takings: physical takings and regulatory takings." Asociación de Subscripción Conjunta del Seguro Responsabilidad Obligatorio v. Flores-Galarza, 484 F.3d 1, 28-29 (1st Cir. 2007) (citing Brown v. Legal Found. of Wash., 538 U.S. 216, 233 (2003)).  "A physical taking occurs either when there is a condemnation or a physical appropriation of property." Philip Morris, Inc. v. Reilly, 312 F.3d 24, 33 (1st Cir. 2002).  "A regulatory taking transpires when some significant restriction is placed upon an owner's use of his property for which 'justice and fairness' require that compensation be given." Id. (quoting Goldblatt v. Hempstead, 369 U.S. 590, 594 (1962)).

"[T]he Supreme Court has identified 'two categories of regulatory action that generally will be deemed per se takings.'" Franklin Mem. Hosp. v. Harvey, 575 F.3d 121, 125 (1st Cir. 2009) (quoting Lingle, 544 U.S. at 538).  "First, where [the] government requires an owner to suffer a permanent physical invasion of her property—however minor—it must provide just compensation." Lingle, 544 U.S. at 538.  Second, "where the 'regulations completely deprive an owner of _all_ economically

beneficial us[e] of her property.'" <u>Franklin Mem. Hosp.</u>, 575 F.3d at 125 (quoting <u>Lingle</u>, 544 U.S. at 538) (alterations in original).

## ii. Discussion

The plaintiffs fail to establish a Fifth Amendment takings claim. The plaintiffs contend that the defendants, "under color of law and authority, . . . depriv[ed] Plaintiffs . . . of their property in violation of their constitutional rights." (Docket No. 19 at pp. 15 and 23.) The plaintiffs, however, do not assert a "protected property interest." <u>See</u> <u>Santiago-Ramos</u>, 834 F.3d at 106. The plaintiffs forfeited their interest in the funds by voluntarily paying the enhanced security fees to the defendants. <u>See</u> <u>id.</u> at 107; <u>see also</u> <u>Manistee Apartments, LLC v. City of Chicago</u>, 844 F.3d 630, 633 (7th Cir. 2016) ("It is, of course, indisputable that the plaintiff had a cognizable property in the entirety of the amount it paid to the City of Chicago . . . . But, . . . Manistee *voluntarily* paid this amount to the City, and voluntary payment is not a property deprivation."). "It is beyond dispute that . . . user fees . . . are not 'takings.'" <u>Koontz v. St. Johns River Water Mgmt. Dist.</u>, 570 U.S. 595, 615 (2013) (internal quotation marks) (citing cases).[9]

---

[9] A user fee is a "charge assessed for the use of a governmental facility or service," like the enhanced security fee charged by the defendants in this case. <u>See</u> <u>Trailer Bridge</u>, 797 F.3d at 145.

The plaintiffs also provide no information to support their takings claim. They do not allege "a condemnation or a physical appropriation of property," see Philip Morris, 312 F.3d at 33, nor do they claim that a government regulation "require[d] [them] to suffer a permanent physical invasion of [their] property," see Lingle, 544 U.S. at 538, or that a government regulation "completely deprive[d] [them] of all economically beneficial us[e] of [their] property.'" See Franklin Mem. Hosp., 575 F.3d at 125. Indeed, there is no mention of "takings" in the amended complaint. See Docket No. 19.

Because the plaintiffs fail to plead sufficient factual matter to state a section 1983 Fifth Amendment takings claim, the Court **GRANTS** the defendants' motions to dismiss (Docket Nos. 55 and 85) with respect to the plaintiffs' takings claim. See Santiago, 655 F.3d at 68; Twombly, 550 U.S. at 570.

### C.   Fourteenth Amendment Due Process Claim

#### i.   Applicable Law

Pursuant to the Fourteenth Amendment, a "[s]tate [shall not] deprive any person of life, liberty, or property, without due process of law." Fournier v. Reardon, 160 F.3d 754, 757 (1st Cir. 1998) (internal quotation marks omitted) (citing U.S. Const. amend. XIV). "Due process claims may take either of

two forms: procedural due process or substantive due process." Id. (internal quotation marks and citation omitted).

Procedural due process requires "fair procedure." Zinermon v. Burch, 494 U.S. 113, 125 (1990). "This right assures individuals who are threatened with the deprivation of a significant liberty or property interest by the state notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Ford v. Bender, 768 F.3d 15, 24 (1st Cir. 2014) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). To establish a procedural due process claim pursuant to section 1983, a plaintiff must "(1) allege facts that show that the plaintiff has a property interest, as defined by state law, and (2) that the conduct complained of, committed under color of state law, has deprived the plaintiff of that property interest without constitutionally adequate procedures." Vélez-Herrero v. Guzman, 330 F. Supp. 2d 62, 71 (D.P.R. 2004) (Fusté, J.) (citing PFZ Props., Inc. v. Rodríguez, 928 F.2d 28, 30 (1st Cir. 1991)). "[T]he adequacy of the due process provided by the state is assessed by means of a balancing test that weighs the government's interest against the private interest affected, the risk of an erroneous deprivation, and the value of additional safeguards." Morales-Torres v. Santiago-Díaz, 338 F. Supp. 2d 283, 292 (D.P.R.

2004) (Fusté, J.) (citing <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976)).

        "Substantive due process . . . imposes limits on what a state may do regardless of what procedural protection is provided." <u>Fournier</u>, 160 F.3d at 757 (citations omitted). Substantive due process "affords only those protections 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" <u>Michael H. v. Gerald D.</u>, 491 U.S. 110, 109 (1989) (quoting <u>Snyder v. Massachusetts</u>, 291 U.S. 97, 105 (1934)). "Not every property interest is entitled to the protection of substantive due process." <u>Coyne v. City of Somerville</u>, 770 F. Supp. 740, 747 (D. Mass. 1991); <u>see</u> <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 577 (1972). A successful substantive due process claim must have "significant resemblance to those interests previously viewed as fundamental by the Constitution," and not be "a right weaved from the cloth of state law." <u>Id.</u>

        "While a property interest created under state law will receive the protections of procedural due process, only those property rights derived under the Constitution receive the protections of substantive due process." <u>Coyne</u>, 770 F. Supp. at 747 (citing <u>Regents of Univ. of Mich. v. Ewing</u>, 474 U.S. 214, 229 (1985) (Powell, J., concurring)). Substantive due process does not protect "indirect state action having only an incidental

effect" on one's protected liberty or property interest.  <u>Pittsley</u>

<u>v. Warish</u>, 927 F.2d 3, 8 (1st Cir. 1991), <u>abrogated on other</u>

<u>grounds</u>, <u>Martínez v. Cui</u>, 608 F.3d 54 (1st Cir. 2010).  Nor does

substantive due process protect "the failure of the government and

its officials to abide by their contract[s]."  <u>Charles v. Baesler</u>,

910 F.2d 1349, 1353 (6th Cir. 1990).

### ii. Discussion

The plaintiffs fail to assert sufficient factual

allegations to state procedural or substantive due process claims

pursuant to section 1983.  <u>See</u> <u>Santiago-Ramos</u>, 834 F.3d at 107;

<u>Vélez-Herrero</u>, 330 F. Supp. 2d at 71 (citing <u>PFZ Props., Inc.</u>, 928

F.2d at 30); <u>Twombly</u>, 550 U.S. at 570; <u>Ocasio-Hernández</u>, 640 F.3d

at 13.  The demonstration of a protected property interest is

fundamental to procedural and substantive due process claims.  <u>See</u>

<u>Ford</u>, 768 F.3d at 24; <u>Coyne</u>, 770 F. Supp. at 747.  The plaintiffs

do not establish a valid property interest.[10]  Accordingly, the

Court **GRANTS** the defendants' motions to dismiss (Docket Nos. 55

and 85) with respect to the plaintiffs' procedural and substantive

due process claims.

---

[10] For a discussion regarding the plaintiffs' failure to establish a valid property interest, see <u>supra</u> Section VII(B)(ii).

**D.   Commerce Clause Claim**

**i.   Applicable Law**

The Commerce Clause "precludes States 'from discriminat[ing] between transactions on the basis of some interstate element [] and inhibits 'economic protectionism' between the states." Trailer Bridge, 797 F.3d at 144 (citing Comptroller of Treasury of Md. V. Wynne, 135 S. Ct. 1787, 1794 (2015); New Energy Co. of Ind. v. Limbach, 486 U.S. 269, 273-74 (1988)). User fees are constitutional if they are: (1) "based on some fair approximation of use of the facilities," (2) "not excessive in relation to the benefits conferred," and (3) "do[] not discriminate against interstate commerce." Northwest Airlines, Inc. v. County of Kent, 510 U.S. 355, 369 (1994) (citing Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines, Inc., 405 U.S. 707, 716-17 (1972)). "Those challenging the government action carry the burden of persuasion." Trailer Bridge, 797 F.3d at 145 (citation omitted).

First, to determine whether a user fee "is based on some fair approximation of use of the facilities," a court asks "whether the government is charging each individual entity a fee that is reasonably proportional to the entity's use, and whether the government has reasonably drawn a line between those it is charging and those it is not." Trailer Bridge, 797 F.3d at 145

(citing <u>Northwest Airlines</u>, 510 U.S. at 368-69).  Second, a court

compares the fee with the "costs incurred in connection with . .

. [the] facilities" to determine whether the fee is "excessive in

relation to the benefits conferred."  <u>Id.</u> at 146 (citing <u>Northwest</u>

<u>Airlines</u>, 510 U.S. at 369); <u>Am. Airlines, Inc. v. Mass. Port Auth.</u>,

560 F.2d 1036, 1038 (1st Cir. 1977).  "A fee is unconstitutional

only insofar as it is 'excessive in relation to the *costs* incurred

by the taxing authorities.'"  <u>Trailer Bridge</u>, 797 F.3d at 146

(quoting <u>Evansville</u>, 405 U.S. at 719).

        Finally, a court considers "whether the regulation

discriminates against interstate commerce."  <u>Trailer Bridge</u>, 797

F.3d at 145 (citing <u>Evansville</u>, 405 U.S. at 719).  "Where we have

a facially neutral regulation, . . . the law 'will be upheld unless

the burden imposed on such commerce is clearly excessive in

relation to the putative local benefits.'"  <u>Id.</u> (quoting <u>Pike v.</u>

<u>Bruce Church, Inc.</u>, 397 U.S. 137, 142 (1970)).  "[A] party cannot

satisfy its burden simply by showing that a government action

affects an out-of-state company or manufacturer."  <u>Id.</u> (citing

<u>Exxon Corp. v. Governor of Md.</u>, 437 U.S. 117, 126 (1978)).

"Instead, the evidence must illustrate that the government action

interferes with interstate commerce by, for example, dissuading

competition from out-of-state corporations."  <u>Id.</u> (citing <u>Family</u>

<u>Winemakers of Cal. v. Jenkins</u>, 592 F.3d 1, 10-11 (1st Cir. 2010)).

### ii. Discussion

The plaintiffs assert sufficient factual matter to state a Commerce Clause claim that is plausible on its face.  See Northwest Airlines, 510 U.S. at 369 (citing Evansville, 405 U.S. at 716-17); Twombly, 550 U.S. at 570.  The plaintiffs contend that the enhanced security fees are unconstitutional user fees.  (Docket No. 19 at p. 22.)  According to the plaintiffs, the defendants collect enhanced security fees for "non-containerized cargo such as cars, ISO tanks, cargo on platforms, and other types of cargo which are imported without using shipping containers," as well as "cargo entering the Port of San Juan, through some marine terminals which do not have access to scanning stations," and "cargo . . . that [is] not being scanned at all."  Id. at pp. 13-15.  Construing these allegations "liberally" and "indulg[ing] all reasonable inferences" in the plaintiffs' favor, see Katz, 672 F.3d at 70, it is plausible that the fees are "excessive in relation to the benefits conferred," "discriminat[ory] against interstate commerce," and not "based on some fair approximation of use of the facilities."  See Northwest Airlines, 510 U.S. at 369 (citing Evansville, 405 U.S. at 716-17).

The plaintiffs also allege that the defendants violate the Commerce Clause "under color of state law."  Docket No. 19 at p. 21-22; see Santiago, 655 F.3d at 68.  According to

the plaintiffs, "PRPA . . . purported to act under color of state law," and S2 and Rapiscan "were agents of PRPA and willful participants in a joint activity with PRPA and acted in concert pursuant to a custom or usage that had the appearance of the force of law." (Docket No. 19 at pp. 21-22.) No party disputes that the defendants are state actors for the purpose of section 1983.

S2 and Rapiscan's argument that the plaintiffs fail to allege a causal connection between S2, Rapiscan, and the Commerce Clause violation is unpersuasive. See Docket No. 55 at pp. 16-18. S2 and Rapiscan contend that the amended complaint "fails to allege that Rapiscan or S2 individually caused the ocean carriers to pass on their own [enhanced security fee] costs to shippers like Plaintiffs." Id. at p. 17. They argue that the amended complaint is "devoid of any factual allegations that Rapiscan or S2 individually imposed on or even collected any [enhanced security fees] from ocean carriers, let alone for cargo not scanned by them." Id.

The plaintiffs' allegations, however, are sufficient to "establish the link" between S2, Rapiscan, "and the alleged violation of federal rights." See Torres-López, 209 F. Supp. 3d at 455 (citing González-Piña, 407 F.3d at 432). The plaintiffs assert that Rapiscan agreed to "conduct all services of non-intrusive scanning of shipping containers entering Puerto Rico

through the port of San Juan" and that "Rapiscan assigned all of
its purported rights" pursuant to the agreement "to its wholly
owned subsidiary and alter ego, S2." (Docket No. 19 at pp. 9-10.)
According to the plaintiffs, S2 and Rapiscan "purposely forced
ocean carriers and their agents into becoming the Defendants'
Enhanced Security Fee [] collection agents" and "acted and/or
continue to act *ultra vires* in collecting [] Enhanced Security
Fees in connection with the cargo scanning program." Id. at
pp. 11-13. The plaintiffs allege that S2 and Rapiscan "collected
and derived economic benefit from the Enhanced Security Fees under
color of law and authority, there by [sic] depriving Plaintiffs
. . . of their property in violation of their constitutional
rights." Id. at p. 15. The plaintiffs thus indicate "action or
inaction" by S2 and Rapiscan "within the scope of [their]
responsibilities that would make [them] personally answerable in
damages under Section 1983." Torres-López, 209 F. Supp. 3d at 455
(alterations in original) (citing Pinto, 737 F.2d at 133).

        Because the plaintiffs adequately allege that the
defendants violated the Commerce Clause, a federally secured
right, and that the challenged conduct transpired "under color of
state law," the plaintiffs assert a plausible claim pursuant to
section 1983. See Docket No. 19 at pp. 21-23; Santiago, 655 F.3d
at 68. Accordingly, the Court **DENIES** the defendants' motions to

dismiss (Docket Nos. 55 and 85) with respect to the plaintiffs'
section 1983 Commerce Clause claim.

## VII. Statute of Limitations

PRPA raises an affirmative defense that the plaintiffs are
time-barred from their section 1983 claims.  (Docket No. 85 at
pp. 22-23.)

### A.  Applicable Law

"Affirmative defenses, such as the statute of
limitations, may be raised in a motion to dismiss under Federal
Rule of Civil Procedure 12(b)(6), provided that 'the facts
establishing the defense [are] clear 'on the face of the
plaintiff's pleadings.'"  Trans-Spec Truck Serv., Inc. v.
Caterpillar, Inc., 524 F.3d 315, 320 (1st Cir. 2008) (alteration
in original) (citation omitted).  Dismissal is appropriate
"[w]here the dates included in the complaint show that the
limitations period has been exceeded and the complaint fails to
'sketch a factual predicate' that would warrant the application of
either a different statute of limitations period or equitable
estoppel."  Id. (citation omitted).

Courts apply a one-year statute of limitations for
section 1983 claims.  González-García v. P.R. Elec. Power Auth.,
214 F. Supp. 2d 194, 200 (D.P.R. 2002) (Fusté, J.) (citing Rivera-

Ramos v. Román, 156 F.3d 276, 282 (1st Cir. 1998)).[11]  The one-
year statute of limitations "begins running one day after the date
of accrual, which is the date plaintiff knew or had reason to know
of the injury." Benítez-Pons v. Puerto Rico, 136 F.3d 54, 59 (1st
Cir. 1998); see Serrano-Nova v. Banco Popular de P.R., Inc., 254
F. Supp. 2d 251, 260 (D.P.R. 2003) (Domínguez, J.) ("A knowing
plaintiff has an obligation to file promptly or lose his claim.").[12]
The date of accrual is determined by "identify[ing] the actual
injury of which the plaintiff complains." Guzmán-Rivera v. Rivera-
Cruz, 29 F.3d 3, 5 (1st Cir. 1994).

       An exception to the one-year statute of limitations for
section 1983 claims is the continuing violation doctrine.  See
González-García, 214 F. Supp. 2d at 201-02 (citing Provencher v.

---

[11] Because section 1983 "lacks an accompanying federal statute of limitations,"
courts "adopt relevant provisions from the analogous statute of limitations of
the forum state." González-García, 214 F. Supp. 2d at 199-200 (citing 42 U.S.C.
§ 1983; Wilson v. García, 471 U.S. 261, 266-80 (1985)).  "For section 1983, the
most appropriate provision is the statute of limitations for personal injury
cases." Id. at 200 (citing Owens v. Okure, 488 U.S. 235, 236 (1989)).  "In
Puerto Rico, a one-year statute of limitations governs personal injury actions."
Id. (citing P.R. Laws tit. 31, § 5298(2)).  Accordingly, the Court applies a
one-year statute of limitations to the plaintiffs' section 1983 claims.

[12] "For section 1983 actions, federal law governs the date on which a cause of
action accrues (i.e., when the statute begins to run) while the length of the
period and tolling doctrine are taken from local law." Rivera-Ramos, 156 F.3d
at 282.

CVS Pharmacy, 145 F.3d 5, 13 (1st Cir. 1998)).[13]  To establish that

a continuing violation occurred, a plaintiff must first show that

the "conduct [] [took] place 'over a series of days or perhaps

years.'"  Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130 (1st

Cir. 2009) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S.

101, 117 (2002)).  A plaintiff must then demonstrate "that an

unlawful act occurred or that an illegal policy existed within the

period prescribed by the statute [of limitations]."  Ruiz-Casillas

v. Camacho-Morales, No. 02-2640, 2004 WL 3622480, at *5 (D.P.R.

Apr. 27, 2004) (Fusté, J.) (citing Johnson, 840 F.2d at 137),

aff'd, 415 F.3d 127 (1st Cir. 2005).[14]

---

[13] "The continuing violation doctrine creates an equitable exception to the statute of limitations when unlawful behavior is alleged to be ongoing." González-García, 214 F. Supp. 2d at 201-02 (citing Provencher, 145 F.3d at 13). "Continuing violations are of two types: serial or systemic."  Id. at 202 (citing Kassaye v. Bryant Coll., 999 F.2d 603, 606 (1st Cir. 1993)).  "Systemic violations refer to the general practices and policies of an employer, such as systems of hiring, training, and promotion."  Id. (citing Provencher, 145 F.3d at 14).  Systemic violations "need not involve an identifiable, discrete act of discrimination transpiring within the limitation[s] period."  Jensen v. Frank, 912 F.2d 517, 523 (1st Cir. 1990).  "To establish a [systematic] continuing violation, the plaintiff 'must allege that a discriminatory act occurred or that a discriminatory policy or practice existed' within the statutory period." Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 321 F. Supp. 2d 285, 291 (D.P.R. 2004) (Casellas, J.) (quoting Johnson v. Gen. Elec., 840 F.2d 132, 137 (1st Cir. 1988)).  In contrast, a serial violation "refers to a number of discriminatory acts emanating from the same discriminatory animus, where each act constitutes a separate actionable wrong."  Id. (quoting Jensen, 912 F.2d at 522).

[14] "[I]f one of the discriminatory acts standing alone is of 'sufficient permanence' that it should trigger an 'awareness of the need to assert one's rights,' then the [continuing] violation exception does not apply."  Phillips v. City of Methuen, 818 F. Supp. 2d 325, 330 (D. Mass. 2011) (citing O'Rourke v. City of Providence, 235 F.3d 713, 731 (1st Cir. 2001)).

**B.   Discussion**

    The plaintiffs' remaining section 1983 claim survives

the defendants' statute of limitations defense because the

continuing violation doctrine applies to the plaintiffs' action.

See González-García, 214 F. Supp. 2d at 201-02.  The plaintiffs

allege that the defendants' unlawful conduct has "take[n] place

'over a series of . . . years.'"  See Tobin, 553 F.3d at 130

(quoting Morgan, 536 U.S. at 117); Docket No. 19 at pp. 13-14

("Defendants acted and/or continued to act *ultra vires* in

collecting [] []Enhanced Security Fees[] in connection with the

cargo scanning program:  [s]ince at least 2009.").  The plaintiffs

also allege that the "unlawful act occurred or that an illegal

policy existed within the period prescribed by the statute [of

limitations]."  See Ruiz-Casillas, 2004 WL 3622480, at *5 (citing

Johnson, 840 F.2d at 137); Docket No. 19 at pp. 13-14.  According

to the plaintiffs, they "have sustained substantial and continuing

economic losses" due to the defendants' conduct beginning from the

scanning program's inception because the defendants have continued

to collect enhanced security fees from the plaintiffs.  (Docket

No. 19 at pp. 14-15.)  Because the plaintiffs' section 1983 claims

involve a continuing violation and the unlawful conduct occurred

within the period prescribed by the section 1983 statute of

limitations, the plaintiffs' section 1983 claims are not time-

barred.  The Court **DENIES** PRPA's defense that this action is time-barred.

## VIII. Qualified Sovereign Immunity

S2 and Rapiscan argue that they are entitled to qualified sovereign immunity from the plaintiffs' action.  (Docket No. 55 at pp. 18-20.)

### A.  Legal Standard

"Qualified immunity shields government officials performing discretionary functions from civil liability for money damages when their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known."  Nereida-González v. Tirado-Delgado, 990 F.2d 701, 704 (1st Cir. 1993) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "The primary purpose of providing officials with qualified immunity is to ensure that fear of personal liability will not unduly influence or inhibit their performance of public duties."  Id. at 704-05 (citing Anderson v. Creighton, 483 U.S. 635, 638 (1987); Harlow, 457 U.S. at 814; Carlson v. Green, 446 U.S. 14, 21 n.7 (1980)).  Qualified immunity thus "confers immunity only from individual-capacity suits . . . against government actors."  Id. at 705.

## B.    Discussion

S2 and Rapiscan's argument that they are entitled to qualified immunity is unavailing because they are not "government officials." See Nereida-González, 990 F.2d at 704. S2 is a "limited liability company created and organized under the laws of the Commonwealth of Puerto Rico." (Docket No. 19 at pp. 8-9.) Rapiscan is a "corporation created and organized under the laws of the State of California." Id. at p. 9. Although the First Circuit Court of Appeals has not determined whether private limited liability companies and corporations are "government officials" for the purpose of qualified immunity, this Court adopts the Sixth Circuit Court of Appeals' position that "private corporations are not public officials; and thus, not entitled to qualified immunity." See Hammons v. Norfolk S. Corp., 156 F.3d 701, 706 n.9 (6th Cir. 1998) (citation omitted), abrogated on other grounds, Corr. Servs. Corp. v. Malesko, 534 U.S. 61 (2001).[15]

Qualified immunity is available to government agents and officers in their individual capacities to provide assurance that

---

[15] Although the Tenth Circuit Court of Appeals has held that "there is no bar against a private corporation claiming qualified immunity," the Sixth Circuit Court of Appeals' approach more accurately reflects this Court's understanding of qualified immunity. See Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc., 413 F.3d 1163 (10th Cir. 2005); but see Manis v. Corr. Corp. of Am., 859 F. Supp. 302, 305-06 (M.D. Tenn. 1994) ("Affording the shield of qualified immunity to a private corporation and its employees . . . would directly contradict the policy behind qualified immunity.").

"they will not be held *personally* liable as long as their actions are reasonable in light of current American law." See Anderson, 483 U.S. at 646 (emphasis added). The law affords this protection to individual people, inquiring what a "reasonable *person*" in the defendant's position "would have known" about statutory and constitutional rights. Nereida-González, 990 F.2d at 704 (emphasis added) (citing Harlow, 457 U.S. at 818); see Anderson, 483 U.S. at 638-39. S2 and Rapiscan are not individual people, and therefore not government "officials," for the purpose of this analysis. Cf. Nereida-González, 990 F.2d at 704. Because S2 and Rapiscan are not "government officials," they are not entitled to qualified immunity. Consequently, the Court **DENIES** S2 and Rapiscan's qualified immunity defense (Docket No. 55).

## IX. Necessary Joinder

PRPA moves to dismiss the plaintiffs' claims pursuant to Rule 12(b)(7) for failure to join a necessary party pursuant Rule 19. (Docket No. 85 at pp. 29-32.)

### A. Legal Standard

"Rule 19 addresses situations where a lawsuit is proceeding without a party whose interests are central to the suit." Bacardí Int'l Ltd. v. V. Suárez & Co., 719 F.3d 1, 9 (1st Cir. 2013) (citing Picciotto v. Continental Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008)). "The Rule provides joinder of required

parties when feasible, and for dismissal of suits when joinder of a required party is not feasible and that party is indispensable." Id. (citing Fed. R. Civ. P. 19(a)-(b)). "The Rule calls for courts to make pragmatic, practical judgments that are heavily influenced by the facts of each case." Id. (citing Picciotto, 512 F.3d at 14-15). "In a Rule 19 analysis, a court must first determine if an absent party is a 'required party' under Rule 19(a)." Id. at 10 (citing Picciotto, 512 F.3d at 16). A party is "required" if:

> in that person's absence, the court cannot accord complete relief among existing parties; or [ ] that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

If joinder of a required party "is not feasible," but the party is "so indispensable that the suit must not be litigated without them," the case should be dismissed pursuant to Rule 19(b). Picciotto, 512 F.3d at 15 (internal quotation marks omitted) (citing Fed. R. Civ. P. 19(b)). To determine whether a case should be dismissed for the failure to join an indispensable party, a court evaluates:

> the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; [] the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; [] whether a judgment rendered in the person's absence would be adequate; and [] whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). A court also considers the policies underlying Rule 19, "including the public interest in preventing multiple and repetitive litigation, the interest of the present parties in obtaining complete and effective relief in a single action, and the interest of absentees in avoiding the possible prejudicial effect of deciding the case without them." Picciotto, 512 F.3d at 15-16 (internal quotation marks and citations omitted).

**B.  Discussion**

PRPA's argument that the ocean carriers are indispensable parties is unavailing. See Docket No. 85 at 29-32. PRPA contends that "the essence of Plaintiffs' complaint is to recover the amounts of [enhanced security fees] allegedly paid by them." Id. at p. 30. PRPA argues that the plaintiffs paid the ocean carriers, who "[u]nder Plaintiffs' theory . . . presumably[] pass[ed] on an operating/administrative charge . . . to PRPA." Id. "Yet, any amounts paid by Plaintiffs to the Ocean Carriers are exclusively part of contractual negotiations between them."

Id.  PRPA claims that "PRPA cannot return Plaintiffs any money it did not collect from them in the first place."  Id.

      The plaintiffs, however, allege that they "have sustained substantial and continuing economic losses . . . reasonably believed to be in excess of $150,000,000.00" in enhanced security fees and that the defendants "collected and derived economic benefit from the Enhanced Security Fees." (Docket No. 19 at p. 15.)  There is no reason why the Court cannot "accord complete relief" among the existing parties in the absence of the ocean carriers.  See Bacardí, 719 F.3d at 10 (quoting Fed. R. Civ. P. 19(a)).  Nor do the ocean carriers "claim[] an interest relating to the subject of the action."  See id.  Because complete relief can be afforded between the existing parties and the ocean carriers do not claim an interest in the case, the Court rejects PRPA's contentions regarding necessary joinder.

## X.   Puerto Rico Law Claims

      The defendants contest the plaintiffs' Puerto Rico law claims for unjust enrichment and undue collection.  (Docket No. 55 at pp. 25-26; Docket No. 85 at pp. 26-29.)

### A.   Unjust Enrichment

      The plaintiffs assert an unjust enrichment claim against the defendants. (Docket No. 19 at pp. 23-25.)  Pursuant to Puerto Rico law:

> When there is no statute applicable to the case at issue,
> the court shall decide in accordance with equity, which
> means that natural justice, as embodied in the general
> principles of jurisprudence and in accepted and
> established usages and customs, shall be taken into
> consideration.

P.R. Laws Ann. tit. 31, § 7; see also P.R. Laws Ann. tit. 31,

§ 2992 ("Obligations are created by law, by contracts, by quasi

contracts, and by illicit acts and omissions or by those in which

any kind of fault or negligence occurs."). A Puerto Rico claim

for unjust enrichment consists of five elements: "(1) existence

of enrichment; (2) a correlative loss; (3) nexus between loss and

enrichment; (4) lack of cause for enrichment; and (5) absence of

a legal precept excluding application of enrichment without

cause." Montalvo v. LT's Benjamin Records, Inc., 56 F. Supp. 3d

121, 136 (D.P.R. 2014) (Gelpí, J.) (quoting Hatton v. Municipality

of Ponce, 134 D.P.R. 1001 (P.R. 1994)). "[I]t is well-settled

under Puerto Rico law that the undue enrichment doctrine is not

applicable where . . . there is a legal precept (e.g., a binding

agreement) that excludes the application of such doctrine." P.R.

Tel. Co. v. Sprintcom, Inc., 662 F.3d 74, 97 (1st Cir. 2011)

(alteration in original).

The plaintiffs allege sufficient factual matter to

establish an unjust enrichment claim pursuant to Puerto Rico law.

See Montalvo, 56 F. Supp. 3d at 136-37. The plaintiffs claim:

(1) Defendants have enriched themselves by collecting
Enhanced Security Fees from Plaintiffs, (2) Plaintiffs
. . . have lost money by paying the fees collected by
Defendants, (3) there is a direct relation between
Plaintiffs' economic losses and Defendants' enrichment,
(4) there is no valid cause for the enrichment due to
the illegality of the Enhanced Security Fee since it
first started, or in the alternative, since July 1, 2014,
when regulation 8067 expired; or in the alternative for
cargo that was not scanned or in the further alternative
for cargo that was imported through a terminal that did
not have scanning facilities[,] and (5) there is no legal
precept that would exclude the application of enrichment
without cause.

(Docket No. 19 at pp. 24-25.)  Construed liberally, the amended

complaint alleges adequate facts to "raise a right to relief above

the speculative level" against the defendants.  See Twombly, 550

U.S. at 555; Aversa, 99 F.3d at 1210; see also Ocasio-Hernández,

640 F.3d at 13 (holding that a claim may still proceed even if

"recovery is very remote and unlikely").  Accordingly, the Court

**DENIES** the defendants' motions to dismiss (Docket Nos. 55 and 85)

with respect to the plaintiffs' unjust enrichment claim.

   **B.    Undue Collection**

        The plaintiffs assert an undue collection claim against

the defendants.   (Docket No. 19 at pp. 25-27.)   Pursuant to

Article 1795, "[i]f a thing is received when there was no right to

claim it and which, through an error, has been unduly delivered,

there arises an obligation to restore the same."  P.R. Laws Ann.

tit. 31, § 5121.[16]   The plaintiffs allege that they "paid the

Enhanced Security Fees with the intent of extinguishing the

obligation imposed by Defendants."   (Docket No. 19 at p. 26.)

According to the plaintiffs,

> Because PRPA had no delegated legal authority to inspect
> cargo and enter the PRPA/Rapiscan Agreement, and/or
> because the PRPA/Rapiscan Agreement was annulled when
> assigned to S2 [], and/or because Regulation 8067
> expired on June 30, 2014, and/or because fees were
> charged for cargo that was not scanned and/or for cargo
> imported through terminals that had no scanning
> facility; Plaintiffs aver that they made those payments
> by error because they [were] wrongfully induced to
> believe that these Defendants were lawfully collecting
> the challenged fees.

Id. at p. 26.   The plaintiffs allege sufficient facts to "raise a

right to relief above the speculative level" against the defendants

for undue collection.   See Twombly, 550 U.S. at 555; Aversa, 99

F.3d at 1210; see also Ocasio-Hernández, 640 F.3d at 13 (holding

that a claim may still proceed even if "recovery is very remote

---

[16] The parties agree that "[f]or a claim of undue collection to proceed, three
elements must be present" pursuant to Puerto Rico law:

> (1) a payment was made with the intention of extinguishing an
> obligation, (2) the payment made does not have just consideration
> or cause, in other words, that there is no legal obligation between
> the one who makes the payment and the one who collects it, and
> (3) the payment was made by error and not by mere liberality or any
> other concept.

Docket No. 85 at p. 28 (citing Estado Libre Asociado de P.R. v. Crespo-Torres,
180 D.P.R. 776, 794-95 (P.R. 2011)); see Docket No. 19 at p. 26 (citing same).
All parties, however, fail to submit a certified translation of Crespo-Torres,
180 D.P.R. 776, or any translated case law supporting this assertion.
Accordingly, the Court relies exclusively on the official translation of Article
1795 for the purpose of this Opinion and Order.

and unlikely"). Accordingly, the Court **DENIES** the defendants' motions to dismiss (Docket Nos. 55 and 85) with respect to the plaintiffs' undue collection claim.

## XI. Conclusion

For the reasons set forth above, the defendants' motions to dismiss are **GRANTED in part** and **DENIED in part**. They are **GRANTED** with respect to the plaintiffs' Fifth Amendment and Fourteenth Amendment section 1983 claims, and **DENIED** regarding the plaintiffs' Commerce Clause section 1983 claim and Puerto Rico law claims (Docket Nos. 55 and 85). Consequently, the plaintiffs' takings, procedural due process, and substantive due process claims pursuant to section 1983 are **DISMISSED WITH PREJUDICE** (Docket No. 19). There being no just reason for delay, partial judgment shall be entered accordingly. The defendants' motion to stay discovery pending the ruling on these motions is **MOOT** (Docket No. 89).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 26, 2018.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE